TODD A. NOAH (SBN 15328)
DERGOSITS & NOAH LLP
Three Embarcadero Center, Suite 410
San Francisco, CA 94111
Tel: 415-705-6377
Fax: 415-705-6383
Email: tnoah@dergnoah.com

MICHAEL N. RADER (admitted pro hac vice)
CHELSEA A. LOUGHRAN (admitted pro hac vice)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206
Tel:: (617) 646-8000
Fax:: (617) 646-8646
E-mail: mrader@wolfgreenfield.com
cloughran@wolfgreenfield.com

Attorneys for Defendant
THE JACKSON LABORATORY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALZHEIMER'S INSTITUTE OF AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELAN PHARMACEUTICALS, INC., ELI LILLY AND COMPANY, and THE JACKSON LABORATORY <br><br> Defendants. | Case No. 3:10-cv-00482-EDL <br><br> **THE JACKSON LABORATORY'S OPPOSITION TO ALZHEIMER'S INSTITUTE OF AMERICA'S MOTION FOR LEAVE TO AMEND COMPLAINT (D.I. 151)** <br><br> Date: March 15, 2011 <br> Time: 9:00 am <br> Courtroom: E, 15th Floor |

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................... ii

I.  BACKGROUND ............................................................................................................. 1

    A.  The Jackson Laboratory Is a Non-Profit Repository of Research Mice Dedicated to Curing Human Disease ............................................. 1

    B.  The Alzheimer's Mice Accused of Infringement ..................................................... 2

    C.  AIA's '258 and '169 Patents .................................................................................... 3

    D.  Procedural Posture of this Motion ............................................................................ 4

    E.  Patent Local Rule Deadlines that Have Already Passed .......................................... 6

II. ARGUMENT ................................................................................................................... 6

    A.  The Court Has Discretion to Deny AIA's Motion Based on Undue Delay, Bad Faith, And Prejudice to Jackson and the Public .................................................................. 6

    B.  AIA's Motion was Unduly Delayed for a Full Year ................................................ 7

    C.  The Timing of the Motion and Implausible Explanation For Its Delay Suggest It Was Filed in Bad Faith to Drive Up the Cost of Litigation for Jackson, a Non-Profit .................... 8

    D.  The Proposed Amendment Would Unfairly Prejudice Jackson and the Public ............................................................ 9

III. CONCLUSION ............................................................................................................... 10

**STATEMENT OF THE ISSUES TO BE DECIDED**

Should AIA's motion for leave to file a Second Amended Complaint be denied for one or more of the following reasons: undue delay, unexplained delay, bad faith, failure of prior amendment, prejudice to Jackson, and prejudice to the public?

AIA's motion should be denied because the proposed amendment would unfairly inflate the cost of this case to Jackson and materially delay its schedule, prejudicing Jackson's right to a "just, speedy, and inexpensive determination." Fed. R. Civ. P. 1. Extension of these proceedings would also chill distribution of Alzheimer's mice – prejudicing both Jackson and public health – as scientists are hesitant to share Alzheimer's mice for fear of being drawn into patent litigation.

AIA has not shown a serious need to amend. AIA delayed this motion for over a year. AIA's claim that it "inadvertently" neglected to include the '169 patent in its first two pleadings is not credible. There are only four patents in the asserted patent family. AIA chose two of them to assert against Jackson in its original Complaint, then removed one when filing a First Amended Complaint. In both pleadings AIA asserted the '169 patent against other parties but not against Jackson, and AIA admits that the facts today are identical to the facts known to AIA originally.[1]

Any additional relief available to AIA under its '169 patent, relative to the '258 patent-in-suit, is minimal and cannot justify the added expense of injecting the '169 patent into this case. This motion was filed just after the other small defendants settled. The requested addition of a second patent is a bad faith pressure tactic by AIA to increase the financial burden on Jackson, the only small defendant that did not agree to AIA's settlement demands.

I.  **BACKGROUND**

   A.  **The Jackson Laboratory Is a Non-Profit Repository of Research Mice Dedicated to Curing Human Disease.**

The Jackson Laboratory is a leading non-profit academic research institution whose efforts to cure human disease have contributed to 22 Nobel prizes.[2] Jackson is the world's largest repository and distributor of research mice. Because mice and humans share a similar genetic makeup, mice are one of the most critical tools relied upon by the scientific research community in the effort to cure human disease (including Alzheimer's disease).[3]

---

[1] The '169 patent claims "isolated nucleic acids," not mice. Unlike the parties sued on the '169 patent in the first instance, Jackson is only accused of infringing by selling mice. AIA's repeated decision not to sue Jackson on the '169 patent (in its first two pleadings) was well-reasoned.

[2] http://www.jax.org/milestones/nobels.html

[3] http://research.jax.org/mousegenetics/biomedical_research.html

Page 1  JACKSON'S OPPOSITION TO AIA'S MOTION FOR LEAVE TO AMEND (Case No. 10-cv-00482 EDL)

DERGOSITS & NOAH LLP
Three Embarcadero Center, Suite 410
San Francisco, CA 94111  Tel. 415-705-6377

Jackson maintains (either as live breeding colonies or in cryopreservation) over 5,000 distinct mouse strains for use in a wide variety of biomedical research, and distributes almost 3 million mice annually to approximately 19,000 researchers in more than 50 countries around the world.[4]

Over 500 new strains of research mice are imported into the Jackson repository each year from outside scientists. Prevailing academic standards require investigators to send their mice to a public repository such as Jackson so that those strains are available to other scientists who seek to replicate and build upon their work.[5]

Importation of strains and maintenance of research and distribution colonies are complex and expensive activities. The majority of the mice available from Jackson's Alzheimer's repository[6] sell in low volumes, and Jackson loses money on sales of mice from low-volume strains. Jackson is therefore only able to distribute the accused Alzheimer's mice through the generosity of private philanthropy and federal government (NIH) grants.

### B. The Alzheimer's Mice Accused of Infringement

AIA has accused 22 of the mouse strains in Jackson's repository of patent infringement. These 22 strains are used by research scientists seeking to understand, treat and cure Alzheimer's disease. All of the accused strains were developed by investigators outside of Jackson who agreed to provide them to the Jackson repository. Jackson in turn agreed to make the strains available to the research community, despite knowing with certainty that doing so would result in a financial loss.

The assertion of patent rights over Alzheimer's disease has unfortunately created hesitation among researchers to share their Alzheimer's mice in compliance with prevailing academic standards, for fear that those mice might become the subject of patent litigation.

---

[4] http://www.jax.org/fastfacts/index.html.

[5] NIH-funded research tools such as mice must be shared, for example, by making them available through a public repository like Jackson. http://www.ott.nih.gov/policy/rt_guide_final.aspx#1. Likewise, leading journals such as Nature will not publish research unless the mice on which the research is based are available from a public repository. E.g., Exhibit A – 461 Nature 171 (2009).

[6] http://research.jax.org/repository/alzheimers.html.

Indeed, in 2003 a conference on the subject concluded that researchers were "concerned about sharing or providing a mouse model that may be covered by a patent to their colleagues … This can impede research progress."[7]  In particular, researchers were aware that Michael Mullan of AIA was seeking to obtain a patent covering Alzheimer's mice.  Id.  AIA secured the '258 patent – which includes "mouse claims" as discussed in Section I(C) below – in 2009, and this suit was filed in 2010.  Also in 2010, AIA sued University of Pennsylvania for using Alzheimer's mice obtained from Jackson.  (Exhibit B).  AIA's patent lawsuits are chilling progress toward a cure.

Jackson successfully imported the accused mice into its repository, despite reticence in the research community, by agreeing that the mice would be distributed solely to non-profit researchers, and not to for-profit companies.[8]  Nevertheless, AIA seeks both money damages from Jackson for distributing Alzheimer's mice to non-profit researchers at a financial loss,[9] as well as an injunction prohibiting further distribution.  (D.I. 14 at 9).

### C. AIA's '258 and '169 Patents

In this case AIA has asserted a family of four patents related to a genetic mutation that has been linked to the development of Alzheimer's disease.  One of these, U.S. Patent No. 7,538,258 ("the '258 patent"), is asserted against Jackson in AIA's First Amended Complaint. (D.I. 14 at 9).  A second, U.S. Patent No. 5,455,169 ("the '169 patent"), is the subject of this motion.  The remaining two patents are asserted only against the other defendants.  All four patents share a common specification and three are continuations of the parent '169 patent.

The AIA patents include claims directed to a variety of subject matter related to Alzheimer's disease.  The '258 patent, which issued in 2009 but claims priority to the 1992 filing of the '169 patent, is directed to mice that have been genetically manipulated for Alzheimer's research purposes.  E.g., claim 1 ("A transgenic mouse whose genome comprises…").

---

[7] http://www.alzforum.org/new/detail.asp?id=901.

[8] E.g., http://jaxmice.jax.org/strain/003375.html (Strain 3375, accused of infringement by AIA: "[N]ot available to companies or for-profit entities").

[9] Jackson is aware of no authority for the idea that a "reasonable royalty" on products that a non-profit intentionally sells at a loss to benefit public health would be anything but zero (0) percent.

Page 3  JACKSON'S OPPOSITION TO AIA'S MOTION FOR LEAVE TO AMEND (Case No. 10-cv-00482 EDL)

The '169 patent, by contrast, has no mouse claims. Claim 1, its only independent claim, is limited to "[a]n isolated nucleic acid encoding" a protein believed to play a role in causing Alzheimer's disease. An "isolated" nucleic acid (i.e., segment of DNA) is an *in vitro* research tool used in a laboratory.[10] For example, the '169 patent explains that an isolated nucleic acid can be used to develop antibodies useful in detecting and diagnosing Alzheimer's disease in affected individuals. ('169 patent Col. 3, line 61 – Col. 4, line 34). Jackson, however, does not make, use or sell isolated nucleic acids. The only Alzheimer's-related "products" Jackson offers are mice.

AIA did not assert the '169 patent against Jackson in its original Complaint. (D.I. 1). AIA did not assert the '169 patent against Jackson in its First Amended Complaint. (D.I. 14). Only in this motion for leave to amend, a year after the lawsuit was filed, does AIA suggest that the '169 patent is relevant to Jackson's mice.

### D. Procedural Posture of this Motion

AIA filed this lawsuit against Jackson and six other defendants on February 2, 2010. AIA's original Complaint alleged that Jackson infringed <u>two</u> of the patents in the asserted family, namely the '258 and '963 patents:

> Elan, Lilly, and the Jackson Lab, without the authority or consent of AIA, have been and continue to, upon information and belief, use in the United States … technologies which infringe upon the '258 Patent. <u>In addition, the Jackson Lab has infringed the '963 Patent</u> …

(D.I. 1 ¶ 37) (emphasis added).

In its motion for leave to amend, AIA attempted to bolster its claim of inadvertence by stating that its "original Complaint, filed on February 2, 2010, alleged [that] Jackson infringes <u>one</u> of the four Patents-in-Suit, U.S. Patent No. 7,538,258." (D.I. 151 at 4) (emphasis added). It is not clear how AIA was able to make that representation to the Court in good faith.

---

[10] Products of nature are not patentable. <u>Diamond v. Chakrabarty</u>, 447 U.S. 303, 309-11 (1980). Historically, patentees secured claims to DNA segments by adding the word "isolated" so that the claim would cover only DNA that had been <u>separated</u> from its host for use *in vitro* in a laboratory. In a closely-watched case, however, Judge Sweet in New York recently held that simply adding the word "isolated" does not make a nucleic acid patentable subject matter under 35 U.S.C. § 101. <u>Ass'n for Molecular Pathology v. U.S. Patent and Trademark Office</u>, 702 F.Supp.2d 181 (S.D.N.Y. 2010). That decision is now on appeal to the Federal Circuit.

Despite accusing Jackson of infringing both the '258 and '963 patents, the original Complaint did not accuse Jackson of infringing the '169 patent. AIA's original Complaint only asserted the '169 patent against Elan Pharmaceuticals and Eli Lilly (D.I. 1 ¶ 25), both of which AIA has accused of using technologies related to isolated nucleic acids.

On March 24, 2010, AIA filed a First Amended Complaint which removed the allegation that Jackson infringed the '963 patent, but still did not add the '169 patent against Jackson. In its Answer and Counterclaim, filed in July 2010, Jackson explicitly noted that the '169 patent had not been asserted against it:

> **COUNT I**
>
> **Patent Infringement of U.S. Patent No. 5,455,169**
>
> 23-26. Because the allegations in these paragraphs have not been made against Jackson, a response to these paragraphs is unnecessary.

(D.I. 80 at 4). AIA claims it first realized that the '169 patent had not been asserted against Jackson when preparing its November 2010 infringement contentions. (D.I. 151 at 4). That claim is not plausible. Jackson, in its Answer & Counterclaim, reminded AIA that the '169 patent had not been asserted. AIA read that document and replied to it on August 13, 2010. (D.I. 97).

Even after serving its infringement contentions on November 5, 2010, AIA waited over three months to file this motion on February 7, 2011.

On September 3, 2010, this Court referred the small defendants in this case (i.e., all defendants except for Elan and Eli Lilly) to mediation. (D.I. 102). In the ensuing months, all of the small defendants settled, with the exception of Jackson. (D.I. 105, 120, 143, 144). Jackson and AIA attended mediation on November 15, 2010 but were unable to reach a settlement. Just a month after the last small defendant was dismissed from the case, AIA filed this motion, seeking to assert an "isolated nucleic acid" patent against Jackson's mice.

### E. Patent Local Rule Deadlines That Have Already Passed

Invalidity contentions were due on January 10, 2011. (D.I. 146). Jackson did not prepare invalidity contentions for the '169 patent, because Jackson had not been sued on that patent.

The deadline for identifying claim terms to be construed was January 7, 2011. Id. Jackson did not identify claim terms for the '169 patent because Jackson had not been sued on that patent.

The deadline for identifying claim constructions and intrinsic and extrinsic evidentiary support for those constructions was February 7, 2011, the day this motion was filed. Id. Jackson did not do so for the '169 patent claims because Jackson had not been sued on that patent.

The deadline for the parties to file a Joint Claim Construction Statement with the Court is March 4, 2011, before the March 15, 2011 hearing that AIA noticed on this motion. Id. AIA has not requested postponement of this deadline even though the claim construction issues for the '169 patent (including the term "isolated") differ from those relevant to the '258 patent.

## II. ARGUMENT

### A. The Court Has Discretion to Deny AIA's Motion Based on Undue Delay, Bad Faith, and Prejudice to Jackson and the Public.

Whether to grant a motion for leave to amend rests "within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). The court has "particularly broad" discretion to deny such a motion "where [the moving party] has previously amended" without adding the claim at issue. Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

Under Fed. R. Civ. P. 15(a)(2), leave to amend pleadings should be granted "freely" if the situation is one in which "justice so requires." The Court may deny leave to amend for "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] [5] futility of amendment." Foman, 371 U.S. at 182.

Thus, leave to amend is "not to be granted automatically." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990). Leave to amend may be denied "where there is any apparent or declared reason for doing so." Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991) (citing Foman, 371 U.S. at 182).

"Undue delay is a valid reason for denying leave to amend." Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir. 1990) (affirming denial of motion to amend where plaintiffs "failed to present this [claim] in either their initial or first amended complaint"). In evaluating undue delay courts "inquire whether the moving party knew or should have known the facts and theories raised by the amendment [at the time of] the original pleading." AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 953 (9th Cir. 2006). Therefore, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986).

The absence of a satisfactory explanation for delay can suggest that the amendment is being sought in bad faith – another reason for denying a motion to amend under Foman. Inline Connection Corp. v. AOL Time Warner Inc., 237 F.R.D. 361, 369 (D. Del. 2006) ("Undue delay which is not satisfactorily explained is equivalent to bad faith."); Jackson, 902 F.2d at 1388 (leave to amend was properly denied where eight month delay was "inexplicable and unjustified").

Finally, prejudice to the non-moving party weighs heavily against a requested amendment. Jackson, 902 F.2d at 1387 ("Prejudice to the opposing party is the most important factor.").

### B.     AIA's Motion was Unduly Delayed for a Full Year

AIA filed this motion on February 7, 2011, more than a full year after bringing this suit. AIA admits in its motion papers that it cannot identify any facts, new accused products, or new legal theories differing from those it knew on the day it filed its original Complaint.

Where the facts supporting a proposed amendment were known at the time of filing its original complaint, the moving party's lack of diligence justifies denial of its motion to amend. Jordan v. Los Angeles County, 669 F.2d 1311, 1324 (9th Cir. 1982) ("Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied."); see also AmerisourceBergen, 465 F.3d at 953 (same; quoted *supra*); Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1990) (affirming denial of leave to amend where documents supporting the amendment were "known to Kaplan from the beginning" of the case). Acri, 781 F.2d at 1398 (quoted *supra*).

Even after supposedly identifying its "inadvertent" oversight of the '169 patent when preparing its November 5, 2010 infringement contentions, AIA waited three additional months before filing this motion. And even after raising the issue with the Court at the January 5, 2011 status conference, AIA waited another full month, allowing two claim construction deadlines to pass. Justice does not require the Court to grant a motion that AIA itself has not taken seriously.

### C. The Timing of the Motion and the Implausible Explanation For Its Delay Suggest It Was Filed in Bad Faith to Drive Up the Cost of Litigation for Jackson, a Non-Profit.

AIA's sole explanation for its delay is a single word – "inadvertently." (D.I. 151 at 4). AIA offers no explanation or elaboration beyond that single word. The undisputed facts cast considerable doubt on the unexplained inadvertence upon which AIA relies.

- In its original Complaint, AIA asserted both the '258 and '963 patents. In its First Amended Complaint, AIA withdrew the '963 patent, kept the '258 patent, and elected not to add other patents. See *supra* Section I(D). The record thus shows that AIA carefully considered which of its patents to assert against Jackson in its pleadings.[11]

- In its Answer & Counterclaim, Jackson expressly stated that AIA had not asserted the '169 patent against Jackson. AIA read this document and responded to it, months before AIA supposedly recognized an inadvertent omission. Id.

AIA's failure to offer a plausible explanation for its delay supports denial of the motion and suggests bad faith. AmerisourceBergen, 465 F.3d at 953 ("We will not speculate whether AmerisourceBergen's sudden change in tactics was gamesmanship or the result of an oversight by counsel, but we do conclude that the district court did not abuse its discretion in denying AmerisourceBergen's motion for leave to amend."); Jordan, 669 F.2d at 1324 ("Jordan's attorneys have proffered no satisfactory reason for failing to include the [new] causes of action in the original complaint. On these facts, we find no abuse of discretion in the district court's denial of Jordan's motion to amend his complaint."); Inline, 237 F.R.D. at 369 ("Undue delay which is not satisfactorily explained is equivalent to bad faith.").

---

[11] Failure of prior amendments is another independent ground to deny this motion under Foman. E.g., Kaplan, 49 F.3d at 1370 (affirming denial of motion to amend where plaintiff had previously amended its complaint); Ascon, 866 F.2d at 1160 (discretion to deny a motion to amend is "particularly broad" under these circumstances).

The timeline suggests that this motion was brought to pressure Jackson into settlement by driving up the cost of litigation for Jackson.. AIA originally omitted the '169 patent against Jackson, and maintained that approach in its First Amended Complaint. Months later, after the other small defendants settled and Jackson did not, AIA filed this motion.

The cost-benefit analysis for this motion supports the conclusion that it was brought in bad faith. The cost of granting this motion (to Jackson and even to AIA) would be high. Although AIA is correct that the patents share an inventor and specification, the claims (i.e., isolated nucleic acids vs. transgenic mice) are different. The claim terms requiring construction, and evidence relevant to those constructions, would be different. Likewise the infringement analysis, prior art, and invalidity contentions (including the question of whether "isolated nucleic acids" are patentable under Section 101) would be different – costing both Jackson and AIA.

Yet the benefit to AIA from the amendment would be minimal. The '169 patent would entitle AIA to the same relief already available under the '258 patent, except for potential damages preceding the issuance of the '258 patent in 2009 (since the '169 patent issued earlier). But AIA knows that Jackson's pre-2009 gross sales are only about $1 million. Even if AIA were to win this motion and the entire case, and even if the jury awarded a non-zero reasonable royalty, AIA (as well as Jackson) would spend far more litigating the '169 patent than AIA could recover. In short, this motion makes no economic sense for AIA, except as a tactic to increase the pressure on Jackson, a non-profit with no litigation budget, to settle on AIA's terms. Motions for leave to amend that are brought in bad faith should be denied. Foman 371 U.S. at 182.

### D. The Proposed Amendment Would Unfairly Prejudice Jackson and the Public.

Jackson would be prejudiced by the proposed amendment because it would unfairly drive up the cost of this litigation by forcing Jackson to defend a weak claim that a patent on "isolated nucleic acids" covers mice. Jackson would be unable to avoid significant additional expense because the core question of claim scope would not be addressed until the Markman phase, many months and many thousands of dollars into the case. Kaplan, 49 F.3d at 1370 ("Expense, delay, and wear and tear on individuals and companies count toward prejudice.").

Every dollar that Jackson spends defending this case is a dollar that cannot be put to work in its mouse repository or biomedical research laboratories. The added cost to Jackson is thus also a prejudice to the public, because it impedes research aimed at curing human disease.

The addition of another patent would substantially delay resolution of this case. As noted above, the claims of the two patents differ significantly. Jackson would therefore be entitled to the same lead time for invalidity contentions and claim construction that the other defendants enjoyed when they received infringement contentions <u>for patents-in-suit</u> on November 5, 2010. By the March 15 hearing, the required delay will be over four months.

Jackson, as a defendant and plaintiff-in-counterclaim, has a right to the "just, speedy and inexpensive determination" of this proceeding. Fed. R. Civ. P. 1. Delay in resolution of this action (which Jackson would need in fairness if AIA's motion were granted) would prejudice both Jackson and the public because protracted patent litigation chills the sharing of Alzheimer's mice by the research community. (The fears of scientists reported in 2003 were realized in 2010 when AIA sued both Jackson and University of Pennsylvania over Alzheimer's mice.) As this case drags on, research toward a cure for a devastating disease will continue to be hampered and delayed. <u>See</u> *supra* Section I(B). Thus, addition of the '169 patent a year into this case would not only prejudice Jackson, it would adversely impact the advancement of public health.

### III.   CONCLUSION

For the above reasons, AIA's Motion for Leave to Amend (D.I. 151) should be denied.

Respectfully submitted,

DERGOSITS & NOAH, LLP

Dated: February 22, 2011              By:   /s/ Todd A. Noah
                                            Todd A. Noah

                                      Of counsel:

                                      Michael N. Rader (admitted pro hac vice)
                                      Chelsea A. Loughran (admitted pro hac vice)
                                      WOLF, GREENFIELD & SACKS, P.C.

                                      ATTORNEYS FOR DEFENDANT
                                      THE JACKSON LABORATORY