IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALZHEIMER'S INSTITUTE OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>ELAN CORPORATION PLC, et al.,<br><br>        Defendants. | No. C-10-482-EDL<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND**; **REGARDING MOTION TO SUBSTITUTE COUNSEL** |

Plaintiff Alzheimer's Institute of America, Inc. ("AIA") has filed a Motion for Leave to Amend its First Amended Complaint to assert an additional patent (U.S. Patent No. 5,455,169, or the "'169 Patent") against Defendant Jackson Laboratories ("Jackson") pursuant to Federal Rule of Civil Procedure 15. AIA argues that it inadvertently failed to assert the '169 Patent against Jackson earlier, though it did assert the '169 Patent against two other Defendants (Elan and Eli Lilly) and asserted at least one other patent against Jackson in previous pleadings, and Jackson will suffer no prejudice if leave to amend is granted. Jackson opposes the motion on grounds of undue delay, bad faith and prejudice. The Court hereby DENIES the motion.

**Background**

AIA brought this action against Jackson and other defendants based on a family of four patents (U.S. Patent Nos. 5,455,169; 5,795,963; 6,818,448; and 7,538,258 – collectively, the "Patents-in-Suit") concerned with a genetic mutation that relates to Alzheimer's disease. Three of the patents are continuations of the '169 Patent, and the Patents-in-Suit share the same inventor, specification, and priority date, though their claims are different. See Motion Exs. A-D. Specifically, the '169 Patent claims "an isolated nucleic acid," (i.e., a segment of DNA) and does not mention mice. In

contrast, the '258 Patent is directed to a "Transgenic Mouse Expressing An App 670/671 Mutation." Id.

Jackson is a non-profit academic institute that uses and sells transgenic mice as a research tool, including for use in Alzheimer's research. FAC ¶ 20; Opp. at 1. Jackson maintains over 5,000 distinct mouse strains for biomedical research, and over 500 new strains of mice are imported to the facility each year. Opp. at 2. The mouse strains are developed by researchers outside of Jackson who agree to provide them to Jackson, and Jackson in turn agrees to make them available to the larger research community. Prevailing academic and publication standards require that mice studied be available from a public repository such as Jackson. Id. Jackson's Opposition states that "the majority of the mice available from Jackson's Alzheimer's repository sell in low volumes, and Jackson loses money on sales of mice from low volume strains. Jackson is therefore only able to distribute the accused Alzheimer's mice through the generosity of private philanthropy and federal government (NIH) grants." Id. Further, Jackson contends that it provides the accused mice only to non-profit researchers, and loses money doing so. Opp. at 3. Jackson argues that patent litigation relating to its mice is chilling progress towards an Alzheimer's cure. Opp. at 3.

AIA's original Complaint, filed on February 2, 2010, alleged that Jackson infringes two of the four Patents-in-Suit, including the '258 Patent, which claims "A transgenic mouse whose genome comprises . . . .," and the '963 Patent, which claims an "Amyloid Precursor Protein In Alzheimer's Disease." Compl. ¶ 21, 36-38.[1] AIA accused Elan and Eli Lilly of infringing the '169 Patent based on technologies related to isolated nucleic acids. Compl. ¶ 25. AIA filed an amended complaint on March 24, 2010, in which it omitted reference to Jackson infringing the '963 Patent and maintained that Jackson infringes the '258 Patent, but did not add any allegation that Jackson infringed the '169 Patent. FAC ¶ 20, 35-38. AIA's FAC accuses 22 of the mouse strains in Jackson's repository of patent infringement of the '258 "mouse patent." Id.

Jackson answered the FAC and counterclaimed on July 15, 2010. With respect to allegations of infringement of the '169 Patent, Jackson answered: "Because the allegations in these paragraphs

---

[1] AIA claims that its reference to Jackson's infringement of the '963 Patent in the initial complaint was a typographical error, and there is another section of the complaint accusing other Defendants, but not Jackson, of infringing the '963 Patent. See Compl. ¶ 27-30.

2

have not been made against Jackson, a response to these paragraphs is unnecessary." Answer at 4. AIA responded to Jackson's counterclaims on August 13, 2010, and served Infringement Contentions on November 5, 2010. Goldman Decl. ¶ 2, Ex. A. While preparing its Infringement Contentions, AIA realized that it had inadvertently failed to allege infringement of the '169 Patent against Jackson. Goldman Decl. ¶ 3. In its infringement contentions served on November 5, 2010, AIA disclosed the bases of its infringement contentions against Jackson regarding both the '258 and '169 Patent. Goldman Decl. ¶ 2, Ex. A.

Jackson and AIA participated in an unsuccessful mediation on November 15, 2010. Thereafter, at the parties' consent, the case was transferred from Judge Breyer to this Court. In the parties' case management conference statement, they agreed that motions to amend would be filed no later than 50 days after the Court's issuance of its claim construction ruling. Dkt # 116, 141 at 9. During a conference before this Court on January 5, 2011, AIA stated that it would likely seek leave to amend to assert an additional patent against Jackson, and Jackson stated that it would oppose the amendment. The parties subsequently conferred on the issue, and Jackson declined to consent to amendment. Goldman Decl. ¶ 4. AIA's Proposed SAC seeks to add allegations that the same "products" (i.e. mouse strains) identified in AIA's earlier pleadings also infringe the '169 Patent. Goldman Decl. ¶ 5.

Pursuant to the case schedule, Jackson identified claim terms and served Invalidity Contentions in early January, 2011, but did not include claims or contentions regarding the '169 Patent because it had not been sued on that patent. In early February, the parties identified claim constructions and evidentiary support for the constructions, and Jackson did not do so regarding the '169 Patent because it had not been sued on that patent. Jackson contends that it likely would have disagreed with the positions that the other defendants took with respect to construction of certain of the claim terms in the '169 Patent. The deadline for the parties to file a Joint Claim Construction Statement was March 4, and no party requested postponement of the deadline even though Jackson contends that claim construction issues for the '169 Patent differ from the '258 ("isolated nucleic acid") Patent.

**Legal Standard**

3

A party's right to amend his or her pleadings is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides in relevant part:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court declared that the requirement of Rule 15(a) that leave to amend shall be freely given when justice so requires "is to be heeded." The Ninth Circuit has directed district courts to apply the rule favoring amendments to pleadings with "extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F.2d 183,186 (9th Cir. 1987). In determining whether to allow leave to amend, courts should consider: (1) any bad faith/dilatory motive of the moving party; (2) any prejudice to the opposing party; (3) undue delay; and (4) the futility of the proposed amendment. Jackson v. Bank of Hawaii, 902 F. 2d 1385, 1387 (9th Cir. 1990. However, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (citation omitted). "The district court's discretion to deny leave to amend is particularly broad where a [petitioner] previously has amended the complaint." World Wide Rush, LLC v. City of Los Angeles, 606 F .3d 676, 690 (9th Cir.2010). Ultimately, prejudice is the critical factor in considering motions for leave to amend. Howey v. U.S., 481 F.2d 1187, 1190 (9th Cir. 1973). The party opposing the amendment bears the burden of showing prejudice. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 190 (9th Cir. 1987).

**Analysis**

### 1. Prejudice to Jackson

AIA argues that Jackson will not be prejudiced by the amendment because it has "repeatedly placed Jackson on notice of alleged infringing activity with respect to the technology claimed in the Patents-in-Suit." Motion at 6. In the initial complaint and FAC, it listed the 22 mouse strains it contends infringe, and thereafter included infringement contentions for the '169 Patent specific to

4

Jackson. Goldman Decl. Ex. A. Further, AIA contends, without explanation, that the claim terms of the '169 and '258 Patent overlap significantly. See Reply at 5. AIA argues that the case is in its early stages, no discovery has been propounded and there is no discovery cutoff or trial date set, and the claim construction is five months from now. It argues that, if amendment is allowed, Jackson will have sufficient time to supplement its invalidity contentions to address the '169 Patent.

Jackson counters that it will be prejudiced because the amendment will drive up the cost of litigation by forcing it to defend a weak claim that an "isolated nucleic acid" patent covers mice, and this core question of claim scope will not be resolved until the Markman hearing in six months. It further argues that this increased cost is also a prejudice to the public because it impedes research aimed at curing human disease. Jackson also argues that it will be prejudiced by any resulting delay in the case (which it calculates to be in excess of four months from the time of the infringement contentions to the hearing date) because any delay in resolution chills the sharing of Alzheimer's mice by the medical community. During oral argument, Jackson also persuasively argued that it will be prejudiced because it has not participated in the claim construction process regarding the '169 Patent to date, and the other defendants have taken positions contradictory to its tentative position regarding construction of a key, non-overlapping claim term.

Jackson's prejudice arguments are persuasive. In fairness to Jackson, the case schedule would need to be amended in order to give it adequate time to fully participate in claim construction of the '169 Patent because there are different claims in the '169 Patent that will require claim construction with Jackson's input. Further, the horse of proposed claim construction for the key disputed term has already left the barn, without Jackson, which lost the opportunity to attempt to persuade its co-defendants to adopt a different, united front on the key term in the '169 Patent. Also, Plaintiff has not persuasively countered Jackson's point that the additional litigation cost of claim construction would be a significant burden on Jackson, both because it would inject new arguments and issues into the case and also because, as a non-profit, it can ill afford to divert more of its limited funds to this litigation. Nor has Plaintiff disputed Jackson's claim that prolonging the litigation in this case would harm Jackson and the public by extending the chilling effect of the litigation on mice research on Alzheimer's disease; instead, it argued unpersuasively that there would be minimal if any delay.

5

### 2. Undue Delay

In evaluating undue delay, court inquire into "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006); see also Jordan v. Los Angeles County, 669 F.2d 1311, 1324 (9th Cir. 1982). However, "delay alone no matter how lengthy in an insufficient ground for denial of leave to amend." Webb v. U.S., 655 F.2d 977, 980 (9th Cir. 1981).

AIA's motion does not address the reason for its delay in seeking leave to amend in its moving papers, other than to note that it "inadvertently" failed to assert the '169 Patent against Jackson originally. At oral argument, AIA stated that the omission was an oversight, but failed to explain how its oversight persisted after its filing of an amended complaint and even after Jackson's answer specifically pointed out the omission. Jackson contends that there was undue delay because all of the facts, accused products and legal theories were known to AIA on the day it filed its original complaint in February 2010. Even taking as true AIA's "inadvertence" contention, AIA admittedly learned of its mistake while preparing its November 5, 2010 infringement contentions and still waited three months before filing the motion. It waited a month after the case management conference, while patent case management deadlines passed. Under all of the circumstances, including AIA's previous amendment of the complaint without adding this claim, see World Wide Rush, LLC v. City of Los Angeles, 606 F .3d 676, 690 (9th Cir.2010), the delay here was undue.

### 3. Bad Faith

Jackson also argues that AIA's year-long delay in seeking to amend amounts to bad faith. It argues that AIA's claim of "inadvertent" omission of the '169 Patent claim against it is specious, given that AIA originally asserted two patents against Jackson (but not the '169 Patent) and then amended to omit one of those patents. Jackson argues that this amendment shows that AIA did carefully consider which patents to assert against Jackson, and previously decided not to assert the '169 Patent against it. Further, Jackson points out that its Answer and Counterclaims specifically stated that the '169 Patent had not been asserted against it, and AIA read and responded to the counterclaims, so it was further apprised that it had not asserted the '169 Patent against Jackson.

These facts weaken AIA's inadvertence argument.

Jackson also opines that the motion to amend was brought in bad faith to pressure Jackson, a small non-profit defendant, into settlement by driving up the cost of litigation. It argues that if the motion is granted, the cost will be high to both sides because the claims in the '169 Patent are different and thus the claim terms requiring construction and the evidence will be different, and the infringement analysis, prior art and invalidity contentions are different. In contrast, the benefit to AIA if it prevailed on the '169 Patent is minimal because damages would only be available for the period before 2009 damages, but Jackson's pre-2009, gross sales for that period are only approximately $1 million. Opp. at 9. Interestingly, AIA did not respond directly to the argument that the amendment was a tactic to force settlement by making the added expense of the litigation disproportionate to any incremental damages, either in its Reply or at oral argument, but was silent as to the damages issue. Whether or not these concerns amount to subjective bad faith, they do underscore the limited benefit, if any, that would flow from permitting the amendment, as compared to the prejudice to Jackson that would occur. In any case, the Court need not find bad faith, because denial of leave to amend is proper based on the other factors.

**4.    Judicial Economy**

AIA's motion focuses judicial economy that it urges will be served by allowing the amendment. Jackson relies on IXYS Corp. v. Adv. Power Tech., Inc., 2004 U.S. Dist. LEXIS 804, *15 (N.D. Cal. Jan. 22, 2004), where Judge Patel allowed an amendment to assert a new patent against an existing defendant just before the close of fact discovery and six months before trial. The court considered the interest of judicial economy and consistent resolution of legal and factual issues realized from litigating related issues in the same court simultaneously, rather than in separate actions before different judges. Id. at *6-7. Though there was some prejudice to the defendant and a delay of several months in the trial schedule would be required in order to afford all parties the full amount of time provided by the Patent Local Rules, the Court allowed the amendment based on judicial economy. Id. at *14-15.

AIA argues that this case is similar to IXYS in that the '169 Patent involves technology similar to the already asserted '258 Patent, the patents share an inventor, specification and priority date, and

7

1  the same Jackson products are at issue. It contends that judicial economy and preservation of the
2  parties' resources would not be served if it is forced to bring a second action in another forum to
3  assert its claims against Jackson based on the '169 Patent. At oral argument, however, when
4  questioned by the Court, Plaintiff was less than unequivocal in its contention that another lawsuit
5  would follow, with Plaintiff's counsel indicating that a final decision had not yet been made, in the
6  face of Jackson's expectation to the contrary.

7  While some judicial economy might be served by allowing the amendment, in its discretion the
8  Court finds that under the circumstances here, this consideration does not outweigh the other
9  considerations, including among others that AIA should have been on notice that it failed to assert
10 the '169 Patent against Jackson much earlier, there was some delay in bringing the motion even after
11 it learned of its omission, amendment would de-rail the existing claim construction schedule, and
12 AIA has not responded to Jackson's argument regarding the minimal amount of royalties it might
13 recover under the '169 Patent. For these reasons, as well as those discussed during oral argument,
14 AIA's motion for leave to amend is DENIED.

15 **Motion to Substitute Counsel**

16 On the evening of Friday, March 11, defendant Elan filed a motion for substitution of counsel.
17 Not having seen or anticipated any opposition, the Court granted the motion on March 15 in light of
18 the impending dissolution of the law firm representing Elan up until this time. During the hearing
19 on the motion to amend, counsel for the Plaintiff for the first time raised an objection to the
20 substitution of counsel based on an alleged conflict of interest. Following argument from both sides
21 on the issue, the Court ordered the parties to meet and confer regarding the scope and adequacy of
22 an ethical screening wall within the Dickstein Shapiro law firm to protect any confidential
23 communications, if any (a disputed issue), made between AIA and a member of the firm's Los
24 Angeles office prior to Elan's new counsel joining that firm's Palo alto office. If the parties cannot
25 agree on an appropriate ethical screen, AIA is Ordered to file a Motion to Disqualify by no later than
26 Monday, March 21, with a response from Elan by Tuesday, March 22. The Court will decide the
27 issue on the papers

28 //
//

1 unless it determines that a hearing is necessary.

3 **IT IS SO ORDERED.**

Dated: March 16, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge