IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALZHEIMER'S INSTITUTE OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ELAN CORPORATION PLC, et al.,<br><br>    Defendants. | No. C-10-482-EDL<br><br>**ORDER DENYING MOTION TO COMPEL FOLLOWING** *IN CAMERA* **REVIEW** |

In this patent infringement case, Defendant Elan Pharmaceuticals, Inc. ("Elan") has filed a motion to compel production of two documents (EDMO-AIA006737-6753 and EDMO-AIA006758-6759) withheld on grounds of attorney client privilege and work product by Plaintiff Alzheimer's Institute of America, Inc. ("AIA"). Elan also asks the Court to Order AIA to revise its privilege log, and search, collect and produce all other documents withheld on the basis of privilege of other related entities. The parties' briefs expressed disagreement over whether the motion to compel is timely, either the attorney client privilege or work product doctrine apply to the documents at issue, AIA is the privilege holder, the privilege has been waived, and Elan acted appropriately by sequestering rather than returning or destroying the documents upon receipt of a clawback letter from AIA. The Court has conducted an *in camera* review of the two documents in question and hereby DENIES the motion to compel for the reasons discussed below.

**Background**

The two documents in question are:

    1) EDMO-AIA006737-6753 (the "inventorship analysis"). This is an unsigned, undated analysis of inventorship rights in the '717 mutation (the "London mutation") The document is marked "Confidential and Privileged" on each page, and marked "Work Product of Counsel" on the first page. The document was prepared by an attorney at the law firm of Clyde & Co. and the recipient has been

listed as both "Ron Sexton" and "Ron Sexton (on behalf of Euroinvest)"[1] and the basis for privilege asserted has included "attorney client privilege," "attorney work product (prepared in anticipation of litigation with Imperial College)," and "common interest."

2) EDMO-AIA006758-6759 (the "retainer letter"). This is a letter from Ron Sexton to an attorney relating to a retainer for a patent application.

In February 2011, AIA informed Elan that these documents were inadvertently produced and should have been withheld as privileged and/or work product, and Elan sequestered the documents. Thereafter, Elan obtained new counsel who immediately requested a privilege log. From February to the present, the parties exchanged multiple letters regarding these documents, among others, but were unable to come to an agreement on whether Elan should have access to these two documents. Elan filed this motion to compel in July.

**Analysis**

    **1.    Timeliness of Motion**

AIA issued a clawback letter covering the two documents at issue on February 24, 2011. According to paragraph 13 of the interim protective order in place at the time pursuant to Local Patent Rule 2-2, inadvertent production issues were governed by Rule 26(b)(5)(B). This rule requires that, upon notification of production of a privileged or work-product document, the receiving party must "promptly return, sequester, or destroy" the information and may "promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved." Elan claims that it tried for several months to obtain clarification about AIA's basis for clawing back these documents but AIA delayed in providing answers. AIA argues that Elan did not promptly bring the dispute before the Court as required, and retained the documents instead of returning or destroying them.

On balance, it appears that Elan's decision to wait to bring the motion while AIA clarified its position on why the documents should be withheld, and to sequester the documents in the meantime, was not unreasonable. Therefore, the motion is not denied for failure to comply with Rule 26 and the interim protective order in place at the time the dispute arose. Thereafter, in May 2011, the parties entered into a stipulated protective order which required Elan to file a motion within ten days

---

[1] Mr. Sexton was the CEO of Euroinvest and is now the CEO of AIA. Sexton Decl. ¶ 1-2.

2

of the clawback request. See Dkt. # 177 ¶ 12.3. Elan does not dispute that it did not bring a motion within 10 days, but this Order was not in place at the time of the clawback request so it cannot serve as a basis for denying the motion as untimely. The Court therefore proceeds to the merits of the motion to compel.

**2. Privilege Issues**

    **A. Inventorship Analysis**

        **1. Attorney client privilege**

Elan contends that AIA is not the privilege holder of this document, because it has previously stated that Mr. Sexton (AIA's CEO) received the inventorship analysis on behalf of another of his companies, Euroinvest, and in the context of this litigation has disclaimed any obligation to search the files of Clyde & Co., "counsel for a third-party on an issue arising nineteen years ago." Rajani Decl. Ex. 7. Elan contends that, if Euroinvest is an unrelated third-party as AIA claims, then AIA has no ability to assert its privilege rights now.

AIA counters that the document was prepared for and communicated to Euroinvest *and* Mr. Sexton himself as clients of Clyde & Co. and AIA or Mr. Sexton may assert the privilege. Mr. Sexton claims that Drs. Mullen, Hardy and Goate[2] approached him in 1991 for introduction to a law firm for legal advice about ownership rights in the London mutation. He introduced them to Clyde & Co. and then became interested in an investment opportunity (personally or through Euroinvest) once the ownership issues were sorted out, so he participated in meetings with Clyde & Co. and the doctors. He claims that "we were seeking the advice of Clyde & Co. and clarification with respect to inventorship and ownership of the 'London mutation,'" and that, "In effect, I sought the advice of Clyde & Co. on these issues for diligence purposes." Mr. Sexton claims that he paid the legal fees for the work that Clyde & Co. performed, including preparing the inventorship analysis. See generally Sexton Decl.

Elan characterizes the history somewhat differently, and points to evidence that it believes shows that Mr. Sexton's interests diverged from that of the inventors. Additionally, it appears that

---

[2] Dr. Mullan is the inventor named on the patents-in-suit. Dr. Hardy and Dr. Goate are third parties not involved in this lawsuit.

3

the inventorship analysis was not prepared in 1991, but instead at some unknown time after September 1994, when – according to Elan – Euroinvest and Mr. Sexton had ceased considering an investment opportunity in the London mutation. However, the evidence Elan cites for this position does not show the specific timeframe of Euroinvest or Mr. Sexton's investment interest in the London mutation. See Rajani Dec. Ex. 26, 27. Elan also relies on letters from Clyde & Co. and Dr. Hardy referring to Drs. Hardy and Mullen as the firm's "clients" but not referring to Euroinvest or Mr. Sexton as such. However, AIA persuasively counters that these letters were not intended to recite exactly who was a client and who was not, and do not show that Mr. Sexton was not also a client. Therefore, Elan's argument on this point is not persuasive.

Though somewhat unclear given the disputed facts, it appears more plausible that Mr. Sexton had at least an investment interest in the inventorship and ownership of the London mutation, and thus the analysis Clyde & Co. did on it, such that he should be considered a client. It is otherwise unclear why he paid the bills for Clyde & Co. and attended meetings to help the doctors sort the issue out. While a close question, the Court concludes that Mr. Sexton may assert the privilege for AIA. Even if he could not, the document is protected as work product as addressed below.

### 2. Work Product Protection

Elan also argues that AIA has changed its theory regarding the protection of the inventorship analysis over time but that the evidence belies any work product protection. Specifically, Elan points out that the document was originally withheld as attorney-client privileged communication between Mr. Sexton on behalf of Euroinvest and Clyde & Co. and work product due to anticipation of litigation with Imperial College. Having reviewed the document in camera, the Court is persuaded that it is protected as opinion work product.

### 3. Waiver

Elan next argues that, even if the document is privileged or otherwise protected as work product, disclosure by Euroinvest to AIA waived the privilege. The Court is not persuaded.

AIA opposes waiver by arguing that the same counsel now represents AIA, Mr. Sexton and Dr. Mullen, and that these parties' documents were never precisely segregated for purposes of production and the inventorship analysis was actually produced by Mr. Sexton, not AIA. However,

4

1  Elan persuasively counters that the document is Bates labeled "EDMO-AIA" consistent with other
2  documents produced by AIA and inconsistent with documents produced by other individuals, which
3  are Bates labeled with their individual names.

4  More persuasively, AIA contends that even if the document was disclosed by Mr. Sexton or
5  Euroinvest to AIA, no waiver of work product protection occurred because the disclosure did not
6  "substantially increase[] the opportunity for potential adversaries to obtain the information." See
7  Griffith v. Davis, 161 F.R.D. 687, 699-700 (C.D.Cal. 1995). It argues that, since the document was
8  originally communicated to Mr. Sexton as CEO of Euroinvest, and then shared with AIA, another of
9  Mr. Sexton's companies, there was no substantially increased opportunity for an adversary to obtain
10 the information. Elan does not directly respond to this argument in its Reply and the Court agrees
11 with AIA's position.

12 Similarly, AIA argues that there was no waiver of the attorney client privilege or work product
13 protection in light of the "common interest doctrine." This doctrine, also referred to as the common
14 defense or joint defense doctrine, "qualifies the requirement that a communication be made in
15 confidence, and prevents waiver of the privilege to the extent confidential communications are
16 shared between members of a joint defense. Thus, the existence of a joint defense allows the parties
17 and counsel involved in that defense to disclose privileged information to each other without
18 destroying the privileged nature of those communications." Griffith v. Davis, 161 F.R.D. 687, 692
19 (C.D.Cal. 1995). AIA argues that Mr. Sexton, AIA and Dr. Mullen all share a common interest in
20 this litigation because they jointly want to defeat Elan's claims relating to improper inventorship of
21 the patents-in-suit, which relate to the London mutation. AIA relies heavily on Hydranautics v.
22 FilmTec Corp., 2003 WL 23358200 (S.D. Cal. Aug. 25, 2003), a malicious prosecution case
23 resulting from a prior patent case where the court held that a firm's disclosure of work product to the
24 government did not waive protection because it was disclosed as part of a common interest in
25 establishing that the government held title in the patent at issue during the underlying litigation.

26 Elan counters that the common interest doctrine does not apply absent an underlying privilege
27 which AIA has not shown here. See Gonzales v. U.S., 2010 U.S. Dist. LEXIS 52950, *11-12 (N.D.
28 Cal. 2010). However, for the reasons discussed above, the document is protected by both the

5

attorney client privilege and as work product. Elan alternatively argues that AIA has made no showing that Mr. Sexton on behalf of Euroinvest and Drs. Mullen and Hardy had any common interest relating to alleged potential litigation with Imperial College. However, the issue here does not turn on whether the parties were aligned at the time the document was created, but whether they are now aligned and thus entitled to share otherwise confidential information for purposes of this litigation.

Under the unique circumstances of this case, no waiver occurred. However, going forward AIA must appropriately label its documents by their custodian and may not rest on assertions that it did not distinguish between AIA, Mr. Sexton and Dr. Mullen for purposes of discovery production.

For all of the foregoing reasons, Elan's motion to compel the inventorship analysis is DENIED.

### b. Retainer Letter Document

Elan moves to compel production of the retainer letter because AIA has not explained how it is privileged or work product other than a "blanket assertion" of privilege. AIA counters that, although the letter is written on Euroinvest letterhead, it is signed by Mr. Sexton, AIA is specifically referenced, and the resulting patent application was filed on behalf of AIA. Having reviewed the document, the Court concludes that it is not work product but it does implicate the attorney client privilege in that it contains direction to an attorney from Mr. Sexton about how to file a patent application. For the reasons discussed above, Mr. Sexton did not waive the privilege and may assert it along with AIA. Elan's motion to compel the retainer letter is also DENIED.

**IT IS SO ORDERED.**

Dated: September 19, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge