UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALZHEIMER'S INSTITUTE OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ELI LILLY & COMPANY, et al.,<br><br>    Defendants. | Case No.  10-cv-00482-EDL<br><br>**ORDER ON DEFENDANTS' MOTIONS REGARDING THE AMOUNT OF THE ATTORNEYS' FEES AWARDS**<br><br>Re: Dkt. Nos. 378, 380 |

On February 2, 2010, Plaintiff Alzheimer's Institute of America, Inc. ("Plaintiff" or "AIA") initiated this patent infringement action involving patents related to the "Swedish mutation," one of the known genetic causes of Alzheimer's disease.  Plaintiff subsequently filed a related case, Alzheimer's Institute of America, Inc. v. Avid Radiopharmaceuticals, Case No. 10-cv-6908 ("Avid"), in the Eastern District of Pennsylvania.  In December 2011, after Defendant Eli Lilly & Company ("Defendant Eli Lilly") moved for summary judgment on the issue of noninfringement, this Court stayed this case pending the jury trial in Avid.  In August 2012, this Court dismissed this case, applying collateral estoppel to the Avid jury's finding that Plaintiff lacked standing to pursue its patent claims.  (Dkt. 314 (August 1, 2012 Order) at 4.)

On June 5, 2015, this Court granted Defendant Eli Lilly's and Defendant Elan Pharmaceuticals, Inc.'s ("Defendant Elan") motions for attorneys' fees, finding that collateral estoppel applies to the district judge's determination in Avid that the case is exceptional under 35 U.S.C. § 285 and that attorney's fees are justified.  See Avid, 2015 WL 1422337, at *1-3 (E.D. Pa. Mar. 30, 2015) (noting that the evidence at trial showed that Plaintiff's principal conspired with two other individuals to misrepresent the true owner of the Swedish mutation inventions and to defraud two universities and that this "conduct was rare and beyond common decency . . . . [and]

1   motivated by ego and greed . . . . [and] [b]ringing this action was nothing more than a perpetuation
2   of the conspiracy"). The Avid court referred the issue of the reasonable amount of fees to award
3   to a Special Master. Id. at *4; see also id. at *3 (noting that "[t]here are equities on both sides"
4   and that the court will "scrutinize the bills closely in light of [these] equitable concerns"). On June
5   26, 2015, Defendants Eli Lilly & Elan filed supplemental motions in this case regarding the
6   amount and reasonableness of the fees that they are seeking to recover, on which this Court
7   deferred ruling until the Special Master issued his report in Avid.

In his report and recommendation, Special Master Gene Cohen recommended awarding Avid Radiopharmaceuticals $2,923,901.61 less than its requested amount of $6,867,219.31 in fees. (Dkt. 396-1 (Avid Special Master Report) at 22.) Both Parties in Avid filed objections to the Special Master's report and, in light of the pendency of those objections, this Court ordered the Parties to file supplemental letters addressing the potential impact on this case of the Avid court's ruling on those objections and whether this Court should await that ruling before issuing its own fee determination. Considering the Parties' various submissions and their arguments at the August 11, 2015 hearing, for the reasons set forth below, no further delay is warranted and Defendants' motions are GRANTED in part.

**I.    DISCUSSION**

**A.    Plaintiff's request that the Court continue to defer its ruling on Defendants' motions**

Plaintiff argues that despite the issuance of the Special Master's report, this Court should still defer ruling on Defendants' motions indefinitely, not only until the Avid court issues its ruling on the Parties' objections but also until a planned appeal of the case to the Federal Circuit concludes. Plaintiff notes that Defendants have repeatedly urged this Court to defer to rulings in Avid and argues that the district judge's ruling in that case "will reflect more than number-crunching; it will reflect [the district judge's] ultimate exercise of discretion based on the circumstances before him . . . ." (Dkt. 399 at 3.) Plaintiff thus argues that the Avid court will ultimately be deciding the question of whether the "equities on both sides" of the case warrant a reduction in the fee award and that such a holding could impact this Court's fee determination.

Plaintiff also argues that this Court should defer its ruling so that it can consider any determination by the district judge that Avid's fees are excessive beyond what the Special Master has already found.

However, although Avid and this case involve related subject matter, they are distinct actions. Defendant Elan is not a party to the Avid case. While Avid Radiopharmaceuticals is a subsidiary of Defendant Eli Lilly and they are represented by the same law firm, Plaintiff has not shown an overlap in their representation that is sufficient to warrant any further delay. Significantly, Plaintiff does not point to any specific findings of the Special Master with regard to Avid's bills that are particularly relevant here. Indeed, the bulk of the Avid Special Master's recommended reductions relate to tasks related to summary judgment, pre-trial and trial work, none of which occurred in this case.

Moreover, the Special Master in Avid did not find that either the "relative merits of the parties' litigation positions" or "the parties' relative financial conditions" justified a reduction in the fee award. (Dkt. 369-1 (Avid Special Master Report) at 13.) The Avid Special Master also did not adopt Plaintiff's argument that "Avid should not be rewarded for [its] 'rampant and lucrative patent infringement,'" noting that the issue "has not been litigated and there is no proof [that] there was infringement." (Id.) Although the district judge has not yet ruled on the Parties' objections to the Special Master's report, he recently declined to reduce Avid's recovery of costs based on equitable reasons, noting that:

> [Plaintiff] argues that Avid should not be rewarded for acts of infringement that it may have committed. However, infringement was never determined in this action. Indeed, as Avid notes, a defendant cannot be liable for the infringement of an invalid patent. . . . Thus, we decline to reduce Avid's costs on equitable grounds.

(Dkt. 401-1 (3/23/16 Avid Order) at 5.) Here, as in Avid, there has been no finding of infringement. Accordingly, the Court declines Plaintiff's request to further delay ruling on Defendants' motions.

### B. The amount and reasonableness of Defendants' fee requests

Defendant Eli Lilly seeks to recover $4,493,265.63[1] in "fees it incurred in defending this case . . . for the period of time from the filing of AIA's complaint on February 2, 2010, to the Court's order dismissing the lawsuit on August 6, 2012." (Burwell Decl. ¶ 3.) Additionally, Defendant Elan seeks to recover $3,731,399.63[2] in fees, including fees incurred "between March 8, 2011 and October 31, 2012 [by] Dickstein Shapiro attorneys, paralegals, and litigation support staff," fees incurred "between November 3, 2009 and March 9, 2011 [by] Howrey attorneys, paralegals, and litigation support staff," and fees associated with its first motion for attorney's fees. (Fishman Decl. ¶¶ 9-11; Scott Decl. Corrected Ex. A.)

#### 1. Reasonableness of Defendants' requested hourly billing rates

"A court awarding attorney fees must look to the prevailing market rates in the relevant community." Bell v. Clackamas Cnty., 341 F.3d 858, 868 (9th Cir. 2003) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)); see also View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 987-88 (Fed. Cir. 2000) (approving of the use of the AIPLA survey in assessing billing rates). According to the American Intellectual Property Law Association ("AIPLA"), median and average billing rates in San Francisco in 2010 were as follows:

> Mean Associate - $361.00
>
> Median Associate - $370.00
>
> Third Quartile (75%) Associate - $470.00
>
> Mean Partner - $571.00
>
> Median Partner - $585.00
>
> Third Quartile (75%) Partner - $700.00

(Fishman Decl. Ex. D.)

##### a. Defendant Eli Lilly

---

[1] Although Defendant Eli Lilly originally sought fees totaling $4,582,063.50 (Burwell Decl. ¶ 7), Eli Lilly reduced its requested amount by $88,797.87 in its Reply. (See Burwell Reply Decl. ¶¶ 4-5.)

[2] Although Defendant Elan originally sought fees totaling $3,884,313.03 (Fishman Decl. ¶ 11), it subsequently reduced its requested amount to $3,761,388.63 (Scott Decl. Corrected Ex. A), and then, after the August 11, 2015 hearing, further agreed to reduce its request by $29,989.00 to $3,731,399.63. (See Dkt. 395.)

4

1    Defendant Eli Lilly seeks attorneys' fees at a rate of up to $410.00 per hour for partners
2    and up to $300.00 per hour for associates. Defendant Eli Lilly states that this represents a reduced
3    rate for some of its partners and associates. (Burwell Decl. ¶ 7.) Plaintiff does not object to these
4    rates and they are less than the average AIPLA market rate for San Francisco in 2010. Eli Lilly's
5    requested hourly rates are reasonable.

### b.    Defendant Elan

7    Defendant Elan seeks attorneys' fees at rates between $335.00 and $459.00 per hour for
8    associates and rates between $481.50 and $775.00 per hour for partners. (Fishman Decl. ¶ 5.)
9    Defendant Elan's rates largely fall within the average AIPLA billing rates for San Francisco in
10   2010. For example, the billing rate for the lead partner on this matter for Dickstein Shapiro,
11   Deborah Fishman, is $585.00, which is the AIPLA median market rate. Furthermore, Elan's
12   highest billing rate for associates, $459.00 per hour, is less than the AIPLA third quartile rate.
13   Although Defendant seeks a rate of $775.00 per hour for one senior partner, Lloyd Day, who
14   billed 96.9 hours to the case, Defendant states that Mr. Day has been a lawyer for decades, is
15   "highly experienced" and "specialize[s] in patent, trade secret, and copyright litigation." (Id. ¶
16   5H.) Given his experience, his rate, which is slightly above the AIPLA third quartile rate for
17   partners in San Francisco in 2010, is reasonable.

18   While Plaintiff objects to Elan's fees based on AIPLA average attorney rates for the entire
19   country, the Court's analysis "'should be guided by the rate prevailing in the community,'" not
20   nationwide averages. See Kilopass, 2015 WL 1065883, at *6 (quoting Chalmers v. City of Los
21   Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986)); Bell, 341 F.3d at 868. Additionally, the fact
22   that Elan seeks higher rates than Eli Lilly does not render Elan's rates unreasonable. Accordingly,
23   Elan's requested hourly rates are reasonable.

### 2.    General reasonableness of the amounts sought by Defendants
### a.    Defendant Eli Lilly

26   Plaintiff argues that the total sum that Defendant Eli Lilly seeks to recover in this case,
27   over $4,000,000 in fees, should be reduced because it is inconsistent with the AIPLA survey. See
28   Mathis v. Spears, 857 F.2d 749, 755 (Fed. Cir. 1988) (finding that a district court properly

considered the AIPLA survey of billing rates).  As Plaintiff notes, the 2013 AIPLA survey indicates that the median cost of cases which had approximately $1,000,000.00 to $10,000,000.00 at issue through trial was $1,250,000.00, and only $750,000.00 through the end of discovery.

However, Plaintiff cites no evidence supporting its assertion that the total amount at issue in this case was under $10,000.000.00.  To the contrary, other sections of Plaintiff's brief suggest a larger amount in controversy.  (See Opp. to Ely Lilly Mot. at 2 ("Lilly stands to reap immense financial benefit in large part due directly to infringement of the patents at issue in this litigation"), 14 ("Lilly paid *$800 million* for the purchase of Avid . . . based largely upon Avids' research program, which included innumerable examples of the use of the Swedish mutation . . . . Lilly stands to collect *billions of dollars* in sales revenue going forward . . . . But for the ownership quagmire the patents are now in, one wonders how much Lilly would have paid for a license to these patents." (emphasis in original))).  Furthermore, the cited AIPLA survey is based on nationwide estimates for "a single IP asset, such as one patent at issue." (Scott Reply. Decl. Ex. D. at 3.)  Here, however, four parents were at issue.  Additionally, the AIPLA cost estimates for patent cases in the San Francisco region exceed AIPLA's nationwide estimates.  (See id. Ex. D. at 14.)  Moreover, this case was not typical in that it involved an over twenty-year factual history and complicated ownership and inventorship issues, and Plaintiff sought to enjoin future sales, as well as to recover royalties and treble damages.  (Cmpl. at 9; Dkt 141 at 7.)

According to the AIPLA survey, the median cost for defending all types of patent infringement cases where more than $25,000,000.00 is at issue is $5,500,000.00.  (Id. Ex. 5 at I-132.)  The median cost in such a case for law firms of sixty or more attorneys, such as the law firms that represented Defendants in this case, is $7,000,000.00.  (Id. at I-136.)  Through the end of discovery, the median cost in such a case for large firms is $4,750,000.00.  (Id. at I-135.)  In this case in which Defendant Eli Lilly seeks less than this median amount, Eli Lilly litigated several motions, including motions to sever, to compel and to stay the case, filed a claim construction brief and moved for summary judgment.  See Nilssen v. Gen. Elec. Co., 2011 WL 633414, at *11 (N.D. Ill. Feb. 11, 2011) ("[The plaintiff] alleges that the [AIPLA] report that [the defendant] cites in the Petition for Attorneys' Fees is largely irrelevant because the AIPLA report

6

reflects litigation costs for suits that have proceeded to the end of discovery or are inclusive of all litigation costs. But it does not follow that legal expenses or hourly rates are to be reduced where discovery is not involved, but extensive briefing on various issues and formulation of strategy on how to respond to vexatious litigation are.").[3]

### b.   Defendant Elan

Defendant Elan seeks a smaller fee award than Defendant Eli Lilly while facing a similar potential damages exposure. Therefore, its fee request is not obviously excessive.

### 3.   Adequacy of Defendants' fee documentation

### a.   Defendant Eli Lilly

Plaintiff argues that Defendant Eli Lilly failed to adequately document its fee request because it did not file "the actual invoices submitted to Lilly in connection with this litigation" and "documents sufficient to reflect payments actually made by Lilly to its counsel." (Opp. to Eli Lilly at 10.) However, Defendant Eli Lilly submitted spreadsheets documenting the tasks it performed, the number of hours billed, the actual fees billed and the total fees, as well as the rates at which it seeks to recover. See Desai Decl. ¶ 3 ("[T]he total amount paid by [Eli Lilly] for the legal fees billed by [its lawyers] exceeds the amount Lilly seeks to recover in its Motion for Attorney's Fees."); Reply at 6 (noting that it has "not sought recovery in this case of any tasks that are duplicative of those performed in the Avid case"); see also Welch v. Metro. Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007) ("[T]he district court erred in reducing [the plaintiff's] requested rate because [their counsel] does not collect [the requested rate] from its paying clients. We have repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party. Rather, billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." (internal quotation

---

[3] Plaintiff also argues that Defendant Eli Lilly's bills are unreasonable because seven partners and twelve associates billed time to the case, although Plaintiff does not point to any duplicative tasks. Plaintiff does not explain why this was necessarily inefficient in view of the large amount in controversy and the fact that several of these attorneys did not spend significant time on the case. Accordingly, the Court does not reduce Defendant Eli Lilly's fee award on this basis.

marks and citations omitted)).  Moreover, the fact that the Avid court may have required Defendant Eli Lilly to submit additional documentation in that case does not render its submission here inadequate, especially in light of the extensive supporting billing records submitted by Eli Lilly.  Accordingly, Defendant Eli Lilly's fee request is adequately supported.

### b. Defendant Elan

For similar reasons, Defendant Elan's fee request is also adequately documented.  Although Plaintiff argues that Defendant Elan's attorneys improperly "block-billed" their time in that some entries list the total time worked on a given day by an attorney who performed multiple tasks but do not state the amount of time spent on each discrete task, such a billing method is not necessarily improper.  Further, Plaintiff does not point to any improper tasks included in these "block-bills."

### 4. Defendants' requests for non-attorney time

A party "may not recover for clerical and secretarial work that should be covered in hourly rates as normal overhead.  However, reasonable attorneys' fees may include paralegal services." Limo Hosting v. Fiks, 2010 WL 55876, at *3 (N.D. Cal. Jan. 4, 2010); see also Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); Darling Intern., Inc. v. Baywood Partners, Inc., 2007 WL 4532233, *5 (N.D. Cal. 2007) (excluding hours claimed for "purely clerical and/or secretarial tasks [transmitting materials to a client, making travel arrangements, copying documents, setting up and taking down a war room, serving documents, coordinating a court reporter, and so forth] for which there should be no compensation").

Although in Mathis v. Spears, 857 F.2d 749, 757-58 (Fed. Cir. 1988), the Federal Circuit affirmed an award of fees that included some secretarial work, it did so only for costs that exceeded the normal secretarial workday:

> [The plaintiff] objects that the award includes what [the plaintiff] says are "overhead clerical services," such as paralegal work, secretarial services, overtime, document preparation and outside typing services. [The plaintiff] suggests that [the defendant] got a double recovery for such items because they would have been included in [the defendant's] hourly rates. [The plaintiff] does not, however, refute [the defendant's] statement that *the listed items*

8

> *"were charged only when the volume of work relating to the litigation exceeded the normal secretarial workday, resulting in an out-of-pocket cost above and beyond normal office salaries."* The district court found that [the defendant's] disbursements, including paralegal and law clerk time, were reasonable. We have no reason to disturb that finding.

Mathis, 857 F.2d at 759 (citation omitted) (emphasis added); see also Nikko Materials USA, Inc. v. R.E. Serv. Co., 2006 WL 118438, at *5 (N.D. Cal. Jan. 13, 2006) ("The Federal Circuit has interpreted 35 U.S.C. § 285 as including not only the recovery of attorney fees, but also the recovery of all reasonable expenses incurred in prosecuting the entire action. . . . Such fees include all expenses that are not covered by the attorneys' hourly rates, routinely paid by counsel and billed to the client, and that are not expenses incurred for the convenience of counsel. . . . These expenses may include . . . fees associated with non-attorneys such as paralegals, law clerks, and secretaries . . . ."); Johnson & Johnston Associates, Inc. v. R.E. Serv. Co., 1998 WL 908925, at *9 (N.D. Cal. Dec. 23, 1998), rev'd on other grounds, 285 F.3d 1046 (Fed. Cir. 2002).

### a. Defendant Eli Lilly

Plaintiff argues that many of Defendant Eli Lilly's billing entries for non-attorneys appear to be for clerical and/or secretarial work. For example, Defendant's original submission included billing entries for collecting documents for attorney review, collecting claim construction rulings for attorney review, updating databases and case files, and collecting deposition transcripts. In response, Defendant Eli Lilly withdrew several entries in its Reply.

After the August 11, 2015 hearing, the Parties met and conferred and subsequently lodged a list of disputed time entries totaling $159,245.00 in fees. A review of the disputed time records reveals some entries for clerical and secretarial work performed by case managers and litigation clerks, such as collecting documents and articles, with no indication that this work resulted in out-of-pocket costs beyond normal office salaries. The Court thus discounts Defendant Eli Lilly's request for fees for non-attorney time by 30% to $111,471.50.

### b. Defendant Elan

Plaintiff and Defendant Elan also met and conferred after the August 11, 2015 hearing and lodged a list of disputed time entries totaling $46,417.80 fees. Elan's disputed records include several entries for clerical and secretarial work performed by paralegals, including organizing and

9

preparing files, de-duplicating documents and printing. However, the majority of the disputed entries seek recovery for paralegal services, which are recoverable. Accordingly, the Court discounts Defendant Elan's request for fees for non-attorney time by 25% to $34,813.35.

### 5. Time entries associated with John Hardy, Alison Goate and Henry Houlden

#### a. Defendant Eli Lilly

Plaintiff argues that Defendant Eli Lilly improperly relied "upon the testimony of paid fact witnesses under 'consulting agreements' as part of their defense." (Opp. to Eli Lilly Mot. at 8.) The three such witnesses identified by Plaintiff are John Hardy, Alison Goate and Henry Houlden. Plaintiff seeks to exclude recovery of any fees for time entries associated with these witnesses. In response, Defendant Eli Lilly states that it did not compensate witnesses for their testimony, rather it compensated them "as consultants for the time they spent away from their professional obligations." (Eli Lilly Reply at 3.) Defendant also notes that Plaintiff unsuccessfully raised this issue before the Avid court.

As this case did not proceed to trial, the propriety of Defendant's "consulting agreements" is not at issue. Moreover, Defendant's time entries largely reflect communications about, and research into, these witnesses as opposed to direct communications with them, and these witnesses were relevant to the case. For example, the Avid court noted that John Hardy was one of the participants in the conspiracy "to defraud [the University of South Florida] and Imperial College in London of their ownership rights in the" Swedish mutation. Avid, 2015 WL 1422337, at *1. Accordingly, the Court does not reduce Eli Lilly's fee award on this basis.

#### b. Defendant Elan

Plaintiff also objects to Defendant Elan's time entries referencing these witnesses. However, Defendant Elan does not seek recovery of any fees paid by it to an expert or consultant. Defendant's time entries referencing these individuals properly reflect time spent meeting with these individuals, researching their backgrounds, and reviewing relevant documents, publications and deposition transcripts. Such activities do not provide a basis to reduce Defendant Elan's requested fee award.

Furthermore, Plaintiff objects to Elan's time entries pertaining to Hardy and Goate to the extent that these entries stem from Elan's counsel's separate representation of these two individuals. In response, Elan states that it has removed "billing records for any time entry that relates only to the separate representation of" these third-parties. Indeed, a review of Elan's records reveals that Elan does not seek compensation for time solely related to their attorneys' representation of these individuals, such as fees for defending their depositions. Rather, Elan's billing entries referencing Hardy and Goate reflect time spent on activities where Elan's counsel was involved on behalf of Elan, such as preparing for their Avid depositions. **Given that, as Plaintiff admits, Hardy and Goate were "key [] witnesses relied upon by" Defendants in this case, Elan's involvement with them was reasonable. Accordingly, the Court does not reduce Elan's fee award on this basis.**

### 6. Fees for Defendant's opposition to Plaintiff's motion to stay the case

On September 8, 2011, the Parties in this case stipulated to take the Court's claim construction deadlines off calendar in light of the then-pending trial in Avid. However, the Parties did not at that time propose staying this case. On September 29, 2011, Defendant Eli Lilly moved for summary judgment in this case. On October 17, 2011, Plaintiff moved to stay this case, citing the pendency of the Avid trial as well as an attorney conflict of interest that had arisen when the University of South Florida intervened in Avid. Soon thereafter, Plaintiff's counsel filed a motion to withdraw in this case in the event that the stay was not granted. When Plaintiff moved to stay this case, both Defendant Eli Lilly's motion for summary judgment and Defendant Elan's motion to compel were pending before this Court. Additionally, Defendant Elan states that it too was preparing to file a motion for summary judgment at that time. Both Defendants opposed Plaintiff's motion, arguing that the Court should instead decide Defendant Eli Lilly's, and Defendant Elan's then soon to be filed, motions for summary judgment. On December 22, 2011, this Court granted Plaintiff's motion to stay. (Dkt. 296.) The case was stayed until May 11, 2012. (Dkt. 305.)

Because this Court granted its motion to stay, Plaintiff argues that any fee award should not include time spent opposing its motion. However, recovery of attorneys' fees is not strictly

limited to time spent on winning arguments, but rather includes time spent reasonably by the prevailing party. Defendants made non-frivolous arguments in opposition to Plaintiff's motion, although the Court was ultimately not persuaded. Accordingly, the Court does not exclude Defendants' time entries associated with opposing Plaintiff's stay motion.

### a. Defendant Eli Lilly's time entries during the stay

Plaintiff also argues that Defendant Eli Lilly "rack[ed] up roughly $120,000 in attorneys' fees between the date AIA filed its motion to stay and the date the parties' filed their status report after the Avid trial" and argues that any award should not include fees incurred during this time period. (Opp. to Eli Lilly Mot. at 10.) However, Plaintiff's $120,000.00 figure largely represents time billed prior to December 22, 2011, when the Court granted the stay. Defendant Eli Lilly billed relatively little time between December 22, 2011 and May 7, 2012, when the Parties' filed their joint status update regarding the Avid trial. (See Burwell Decl. Ex. 3; Eli Lilly Reply at 5 (noting that time spent on the case during the stay amounted to "less than $7,000 in billings").) Defendant Eli Lilly's time entries during this period are reasonable.

### b. Defendant Elan's time entries during the stay

In contrast to Defendant Eli Lilly, Defendant Elan incurred over $110,000.00 in attorneys' fees during the approximately five-month stay of this case. Defendant Elan states that during this time they "continued to review documents . . . [and] deposition transcripts . . . moved to quash a subpoena of Elan by AIA served [in] the Avid case (even though the case against Elan was stayed), and follow[ed] the proceedings in Avid, among other tasks." (Elan Reply at 6.) While some continued work during the pendency of a stay is appropriate, Elan fails to explain why expending such a large amount of time during the stay in this case was reasonable. Accordingly, the Court reduces the billing for Defendant Elan's work during the stay by $100,000.00.

### 7. Defendant Elan's time entries pre-dating the filing of this case

"[S]ome of the services performed before a lawsuit" are recoverable such as the "drafting of the initial pleadings and the work associated with the development of the theory of the case." See Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 243 (1985) (allowing recovery of fees in a § 1983 case for time "reasonably expended on the litigation"); see also Dishman v.

12

UNUM Life Ins. Co. of Am., 269 F.3d 974, 988 (9th Cir. 2001) (allowing for recovery of fees in an ERISA case for "work performed before the filing of the complaint [including] conferences with clients, drafting the complaint and other reasonable efforts directed toward the filing of the litigation"); Sierra Club v. U.S. E.P.A., 625 F. Supp. 2d 863, 870 (N.D. Cal. 2007) (applying case law interpreting other statutes to a Clean Air Act case and noting generally that it "appears from the existing case law that the court may award attorneys' fees for pre-litigation work that is necessary to the filing of an action. This requires the court to determine what is necessary and exclude that which may be merely relevant.").

Here, Plaintiff argues that Defendant Elan improperly seeks $235,780.00 in fees incurred prior to the initiation of this suit. (Opp. to Elan Mot. at 8.) Elan's billing entries reflect that it engaged counsel during this time to perform an analysis of Plaintiff's patents and of potential damages. Elan states that it "foresaw litigation" based on a letter from Plaintiff indicating that "[Plaintiff] believes that it is now appropriate for licensing discussion with Elan to re-commence" and that "it appears that a substantial portion of Elan's drug discovery efforts for Alzheimer's Disease are entirely reliant on the unauthorized use of [Plaintiff's] patented technology." (Scott Reply Decl. Ex. E.) As Elan reasonably anticipated that this litigation would occur, its reasonable fees incurred prior to the initiation of this case are recoverable. See Webb, 472 U.S. at 243. Accordingly, the Court does not reduce Elan's fee award on this basis.

### 8. Defendant Elan's billing records for work done by Howrey LLP

In March 2011, Defendant Elan substituted attorneys from Dickstein Shapiro LLP ("Dickstein") as their counsel in place of attorneys from Howrey LLP ("Howrey"), a firm which dissolved later that month. Plaintiff argues that the $1,419,849.50 in fees for work done by Howrey attorneys is unreasonable and should be discounted as Elan's new counsel must have engaged in duplicative efforts during the transition.

However, Plaintiff does not point to any specific entries, or even types of entries, that it views as improper. Defendant Elan notes that a key associate as well as two paralegals assigned to this case transitioned from Howrey to Dickstein, which helped minimize duplicative efforts. Additionally, in order to account for the transition, Defendant Elan states that it has not included

in its request fees totaling $342,289.00 for work done by Howrey attorneys from January to March 2011. Moreover, Defendant Elan's billing records reflect a discount of $12,282.00 of Howrey's fees from the end of 2010, a discount of $125,537.90 of Dickstein's fees for the first half of April 2011 and a discount of $55,480.05 of Dickstein's fees for May 2011.

Although Defendant Elan has properly discounted most of its fees related to its representation transition, Elan still seeks $246,219.30 in fees incurred by Dickstein attorneys in March 2011, the majority of which involve transition-related tasks. Accordingly, the Court reduces Elan's fee request for work performed in March 2011 **by 75% to $61,554.83.**

### 9. Pre- and post-judgment interest

"Under 28 U.S.C. § 1961(a), interest is allowed on money judgments in civil cases recovered in a district court accruing 'from the date of the entry of the judgment.' Courts have interpreted this to mean that post-judgment interest is calculated 'from the date of the judgment establishing the right to the award.'" Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd., 2012 WL 1577365, at *3 (N.D. Cal. May 3, 2012) (quoting Takeda Chem. Indus. Ltd. v. Mylab Labs., Inc., 2007 WL 840368, *14 (S.D.N.Y. 2007)) aff'd sub nom. Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 726 F.3d 1359 (Fed. Cir. 2013); Mathis, 857 F.2d at 759-60 (Awarding post-judgment interest in a patent case, noting that "[t]he provision for calculating interest from entry of judgment deters use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor."). Additionally, "a district court [has] authority, in cases of 'bad faith or other exceptional circumstances,' to award prejudgment interest on the unliquidated sum of an award made under Section 285." Mathis, 857 F.2d at 761.

Here, Defendant Elan, but not Defendant Eli Lilly, requests that the Court award post-judgment interest beginning June 5, 2015, the date of this Court's order finding that an award of fees is appropriate, and requests that the Court "exercise its inherent equitable power to award prejudgment interest." Plaintiff does not address Elan's interest request in its opposition. As this Court determined that an award of attorney's fees was warranted on June 5, 2015, it awards post-judgment interest to Defendant Elan beginning on that date. However, Defendant Elan's pre-judgment interest request is denied.

## II. CONCLUSION

Defendants' motions are granted in part. Defendant Eli Lilly is awarded $4,445,492.13 in fees. Defendant Elan is awarded $3,435,130.71 in fees, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a).

**IT IS SO ORDERED.**

Dated: April 14, 2016

ELIZABETH D. LAPORTE
United States Magistrate Judge